CITIZENS STATE BANK OF MONTICELLO v. FRED BONNES and
Another.

April 20, 1899.

Nos. 11,540—(130).

### Decision Sustained by Evidence.
Evidence *held* sufficient to sustain the decision.

### Sale of Time Check—Transfer of Debt.
A memorandum or time check was signed by the foreman, and given by
him to an employee, stating the number of days the latter worked, and
the balance due. *Held*, a sale and transfer by the employee of this mem-
orandum was a sale of his claim for the amount due him for his wages.

### Certified Copy—Unsigned Affidavit of Chief Clerk.
A certain affidavit, purporting to be made by a public officer, but not
signed by him, *held* not to be his certificate that the instrument to which
it is attached is a true copy of the original on file in his office.

Appeal by defendants from an order of the municipal court of
Minneapolis, Holt, J., denying a motion for a new trial. Affirmed.

*Chas. P. Barker*, for appellants.

*Webster & Taylor*, for respondent.

CANTY, J.

Plaintiff brought this action to recover $28.48, the balance
claimed to be due it from defendants for services rendered by James
Riggs in hauling logs in the pine woods at the request of defend-
ants, the claim for which was assigned by Riggs to plaintiff. On
the trial, the court, without a jury, found for plaintiff. From an
order denying a new trial, defendants appeal.

Appellants contend that the evidence does not support the deci-
sion. Defendants introduced no evidence. Plaintiff's evidence
tends to prove that James Riggs had a two-horse team, and his
brother had another; that James agreed that he and his brother
would each work with his team for defendants in hauling the logs;
and that defendants agreed to pay $60 per month for each team and
driver and pay his fare, and the cost of transporting each team on
the cars, to the logging camps. Defendants told plaintiff and his

brother to go up to the woods, and a man would be there to tell them where to go to work. When they arrived at their destination, James was put to work at "Byrnes' camp," and the brother at "Lyons' camp." After James had worked at Byrnes' camp a considerable part of the winter, he was sent by the foreman at that camp to work at Lyons' camp. The foreman of the latter camp required James to use a four-horse team, and told him that he would allow him but $90 per month for the same. Then James put the four horses into one team, and worked 13 days at Lyons' camp. One Roy West, the son of defendant Lee West, was the clerk and time-keeper at Lyons' camp. When James Riggs had completed his work at Lyons' camp, he was given a statement of his time by Roy West; and, on this statement, the foreman of the camp made out and delivered to James a time check, of which the following is a copy:

"John Lyons' Time Check.
Winnibigoshish Reservation, Lyons' Camp, No. 1.
March 16, 1898.
U. S. Indian Agent, White Earth Agency:
This certifies that Jim Riggs has worked in this camp, as
    teamster, 13 days, at $90.00 per month.................. $44.98
Camp account (goods and cash)....................... 1.50

    Balance, forty-three 48-100 ....................... $43.48
    Payable April 15th, 1898, at U. S. Indian agency, White Earth,
Minnesota.                                    Wm. Tibbitt,
                                                  Foreman.
    Not transferable unless countersigned, John Lyons, by Lee West,
His Attorney in Fact."

When James received this check, he asked the foreman where he would get his money, and was told to "see Mr. West, at Deer River." At the latter place James found one Frank West, another son of defendant West. Frank gave James a check for $15, and indorsed the amount of it on the back of the time check, as follows: "Lee West, cash, $15." It was Frank West who met plaintiff and his brother, and told them where to go to work, when they first went up to the woods. The defendant Lee West paid plaintiff for what work he did at Byrnes' camp.

Appellants contend that it does not appear by this evidence that

the foreman at Lyons' camp ever had authority from defendants to employ James, or to agree, as their agent, to pay him $90 per month. This may be conceded. But, in our opinion, the evidence tends to prove that defendants themselves employed James to work at Lyons' camp. They employed James and his brother; sent them both up to the woods at the same time, and under the same arrangements. The brother always worked at Lyons' camp, and it must be presumed, on the evidence, that he worked there under and pursuant to the contract so made with defendants. If James had originally been sent to Lyons' camp, instead of his brother, it seems to us that the defendants would be liable to him for his wages. The fact that James was not sent to that camp until he had worked some time at Byrnes' camp is not a controlling circumstance in the case.

Appellants contend that it does not appear that the foreman at Lyons' camp had authority to increase the wages of James. True, but it does not appear that the wages were increased. On the contrary, it would seem that they were diminished. While the evidence is loose and unsatisfactory, it tends to prove that during the 13 days James, his brother and their four horses were all employed at Lyons' camp; that the four horses were driven as one team, and James agreed with the foreman to accept $90 per month for this service; and no more is claimed. Defendants cannot complain because only $90 per month is claimed, when by the contract they were liable for $120 per month. Neither has the objection ever been made that the brother is a necessary party to this suit, or has any claim for any part of the services of this four-horse team.

2. We are of the opinion that the sale to plaintiff of the alleged time check was a sale of the amount due James for his services. Such was clearly the intention of the parties. There is nothing in the claim that this time check is commercial paper, to wit, an inland bill of exchange.

3. When plaintiff rested, defendants offered in evidence what their counsel called a certified copy of a contract between John Lyons and defendants, by the terms of which Lyons, a half-breed Indian, agreed to sell, cut, haul and deliver to defendants a certain amount of logs, and they agreed to pay him therefor a certain price.

The offer was objected to as "incompetent, irrelevant, immaterial, and no foundation laid for it." We are of the opinion that the court did not err in sustaining the objection, if for no other reason, because the alleged certified copy does not on its face purport to be certified by any public officer claiming to have the custody of it. The following is the form of the alleged certificate:

"State of Minnesota, County of Becker—ss.: Personally appeared before me, this fourth day of November, 1898, Robert J. Holland, chief clerk at the White Earth Agency, Minnesota, and under oath deposes and says that the foregoing is a true and correct copy of the contract now on file in the office of the United States Indian Agent at White Earth Agency, Minnesota, between Leonidas West and Indian Logger John Lyons.

John Leecy.

"Sworn and subscribed to before me this 4th day of November, 1898.                                         John Leecy,
(Seal)                                          Notary Public,
                                           Becker County, Minn."

If this affidavit had been signed by the affiant, Holland, it might, perhaps, be claimed that it is his certificate, as well as his affidavit. But it does not purport to be signed by him, and is, therefore, his mere ex parte affidavit, and in no respect his certificate. Such an affidavit is not competent as evidence.

Order affirmed.